| | |
|---|---|
| **MATTHEW BOND, HEIDI VENTO,** and **MARIO OLIVELLI,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **Case No. 1:24-cv-00258-MJD** |
| **EQUIPMENTSHARE.COM INC,** ) ) ) | |
| **Defendant.** | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Defendant EquipmentShare.com Inc. ("Defendant") seeks a protective order to block the properly noticed deposition of its Chief Executive Officer, Jabbok Schlacks, relying on the so-called "Apex Doctrine" and Federal Rule of Civil Procedure 26(b)(2)(C). Because the Sixth Circuit has expressly and unequivocally rejected the Apex Doctrine, and because the discovery record demonstrates that Mr. Schlacks possesses unique, first-hand knowledge concerning the core compensation and retaliation claims in this lawsuit. Defendant's Motion should be denied.

**PRELIMINARY NOTE REGARDING CONFIDENTIALITY** Because a Protective Order has been entered in this matter, and in strict compliance with this Court's *Memorandum and Order Regarding Sealing Confidential Information* [Doc. 5], Plaintiffs are purposefully limiting the attachment of confidential exhibits to the public docket. As this Court noted, the burden to seal judicial records is a "heavy one," and parties "are encouraged to be very selective in the information they seek to seal" [Doc. 5]. Given the expedited briefing schedule associated with this matter, Plaintiffs are utilizing limited quotations and citations to the produced documents within this Response. Should the Court deem it necessary to resolve this dispute, Plaintiffs' counsel is

1

prepared to provide the full, unredacted documents directly to the Court for its review.

## I. FACTUAL BACKGROUND

During the time of Plaintiffs' employment, EquipmentShare was not yet the publicly traded corporation it is today; it was a privately held company attempting to aggressively and rapidly expand its national footprint prior to its January 23, 2026, Initial Public Offering. During this time, Mr. Schlacks was highly hands-on and intimately involved in all facets of the business.

Defendant's attempt to shield its CEO from testifying is particularly egregious given the timeline of this litigation and Defendant's own admissions. On September 17, 2024, Defendant served its Rule 26(a)(1)(A) Initial Disclosures, explicitly identifying "Jabbok Schlacks CEO" as an individual having "discoverable knowledge regarding Plaintiffs' employment, Plaintiffs' job performance, and general knowledge of the issues involved in this lawsuit".

Relying on this disclosure, Plaintiffs' counsel first requested Mr. Schlacks's deposition availability via email on July 29, 2025. Months later, on January 12, 2026, defense counsel inquired about which witnesses Plaintiffs intended to depose. On January 16, 2026, Plaintiffs immediately confirmed their intent to depose Mr. Schlacks. At no point during these eight months did Defendant object or claim Mr. Schlacks was shielded from discovery. It was not until March 19, 2026, as final scheduling details were being discussed that Defendant stated for the first time that it "will not agree to the taking of Jabbok Schlacks deposition under the Apex Doctrine".  At that time, Plaintiffs refused to withdraw their request, noting Mr. Schlacks was extremely active in the decisions to withhold Plaintiffs' pay, and formally noticed his deposition on March 23, 2026.

Furthermore, Defendant's own internal communications produced in discovery, reveal that Mr. Schlacks was intimately involved in the exact compensation structures and termination decisions

at issue:

- **Direct Involvement in Withholding Earned Wages and Restructuring Compensation:**

  The record shows that Plaintiffs' commissions were mechanically calculated by lower-level management using a fixed, per-property formula, but management was unable to release the earned funds because Mr. Schlacks continually ignored requests to approve the payments.(EQS_0000544, EQS_0000550, EQS_0000543, EQS_0000417, EQS_0000434, EQS_0000437)  Furthermore, realizing the company was bound by the verbal per-property contract, HR and management spent March and April 2024 submitting proposals directly to Mr. Schlacks in an attempt to unilaterally restructure and cap the Plaintiffs' compensation. For instance, on April 8, 2024, HR submitted a "proposed comp structure" directly to Mr. Schlacks to try and move the Plaintiffs away from their fixed per-property commissions and onto a capped KPI system.(EQUIPMENTSHARE_000447-449)

- **The Evidentiary Value of Missing Replies:**

  Defendant's document production contains numerous messages to Mr. Schlack asking for approval of calculated payments to Plaintiffs, however the documents produced seldom contain a reply from Mr. Schlack.  The absence of these replies confirms that Mr. Schlacks took some action offline which prevented the payments to Plaintiffs from being processed. For example, in November 2023, management petitioned Mr. Schlacks to release an omitted $18,500 payment for Plaintiff Mario Olivelli.

  > From: Bill Burch
  > Timestamp: 11/28/2023 2:17:27 PM
  > I made a mistake on final review of the Q3 bonus pay outs and missed Mario Olivelli. I sent the information to Traci and she has submitted to you for approval. Can you approve his bonus as it was my error and I would like to get it corrected as soon as possible. Let me know if you have any questions. [EQS_0000423]

3

While no reply from Mr. Schlacks was produced, Mr. Burch later confirmed to Mr. Olivelli through Slack that:

> Bill Burch Timestamp: 12/5/2023 11:00:08 PM
> I just walked out of Jabboks office and the bonus is approved. I cannot speak to when it will be paid just yet but it is officially approved. [EQS_0000507].

- **Direct Involvement in Terminations and Withheld Pay:**

Documents produced in discovery establish that Mr. Schlacks was directly managing the timeline of both the withheld compensation and the Plaintiffs' terminations. On May 10, 2024, three days before Plaintiffs were terminated, Bill Burch sent a message to Mr. Schlacks:

> From: Bill Burch Timestamp: 5/10/2024 3:39:57 PM
> (Edited) <@Jabbok Schlacks> <@Mark Wopata> Can you provide updated timing on the restructure and bonus payout. I am, as you can imagine getting lots of questions
> From: Jabbok Schlacks Timestamp: 5/10/2024 4:26:06 PM
> Today on the restructure.
> From: Jabbok Schlacks Timestamp: 5/10/2024 4:26:13 PM
> Should be next week at the latest on the bonuses
> From: Jabbok Schlacks Timestamp: 5/10/2024 4:26:20 PM
> I can jump on a call in a few minutes   [EQS_0000542]

Again, Mr. Schlacks immediately moved the conversation offline, how can Defendant maintain that Mr. Schlacks lacks unique knowledge or that Mr. Burch and Mr. Adams can serve as substitute witnesses; Mr. Burch cannot testify to Mr. Schlacks's state of mind, three days before the terminations.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) permits a court to issue a protective order forbidding a deposition only "for good cause ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". The burden of establishing good cause rests squarely on

4

the moving party, who must illustrate the harm with a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012).

While Rule 26(b)(2)(C)(i) allows a court to limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source," this limitation does not grant blanket immunity to corporate executives who possess relevant, first-hand knowledge. To justify restricting discovery under the rules, "the harassment or oppression should be unreasonable". Regarding the depositions of high-level corporate officers, *Wright & Miller* explains that protection from depositions "is not an ironclad rule". Rather, "the court should look for guidance to a balance of the likelihood of oppression or harassment compared to the value of the inquiry in generating important information." 8A *Wright & Miller.*, Federal Practice and Procedure § 2036 n.7 (3d ed. 2025 update) (quoting *Serrano*, 699 F.3d at 902).

## III. ARGUMENT

### A. The Sixth Circuit Expressly Rejects the "Apex Doctrine."

Defendant's reliance on the "Apex Doctrine" the presumption that deposing a high-level corporate officer is inherently harassing or abusive absent a showing that they possess unique evidence is legally baseless in this jurisdiction. The Sixth Circuit "has explicitly rejected the Apex Doctrine and instead applies Rule 26(c)(1)." *Serrano*, 699 F.3d at 901. As the Sixth Circuit held in *Serrano*, a magistrate judge errs "as a matter of law in relying on [the] 'apex doctrine' to grant [a] protective order." *Id.* at 902. Defendant cannot rely on Mr. Schlacks's title to avoid discovery; it must make a specific, factual showing of unreasonable harassment or oppression. Defendant has failed to do so.

### B. Mr. Schlacks Possesses Unique, First-Hand Knowledge That Cannot Be Obtained From Other Sources.

Defendant argues under Rule 26(b)(2)(C)(i) that the same information can be obtained from deposing David Adams or Bill Burch. As discussed *supra*, this argument fails because the documentary evidence establishes that Mr. Schlacks was the ultimate decision-maker regarding Plaintiffs' compensation, and many of his directives were issued verbally or behind closed doors.

Because Defendant's document production shows management repeatedly petitioning Mr. Schlacks for approval, but seldom contains his written replies, Plaintiffs are deprived of the written record of his determinations. The absence of these replies confirms that Mr. Schlacks's directives were handled verbally or off-platform, such as when Mr. Burch had to physically enter Mr. Schlacks's office to get Plaintiff Olivelli's withheld pay released. Neither Mr. Adams nor Mr. Burch can adequately substitute for Mr. Schlacks's own testimony regarding his state of mind, what he evaluated when reviewing the submitted compensation structures, his rationale for withholding earned wages offline, or his specific directives regarding the "restructure" that resulted in Plaintiffs' terminations.

Because Mr. Schlacks's direct involvement goes to the very heart of Plaintiffs' claims regarding withheld compensation and subsequent retaliatory discharge, his testimony is highly probative. Therefore, Defendant must demonstrate a substantial burden to justify a protective order barring discovery. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012). Defendant has offered no such evidence of a substantial burden, relying instead solely on his title of a now publicly traded company.

Defendant's reliance on *Davis v. SIG Sauer, Inc.* 2023 WL 3292869 is misplaced. In *Davis*, the defendant produced a sworn affidavit from the CEO and prior deposition testimony

6

affirmatively proving the CEO was not involved in the decision at issue; here, Defendant has produced no such affidavit from Mr. Schlacks, and Defendant's own internal Slack messages prove the opposite.

Defendant similarly misconstrues *Elvis Presley Enterprises, Inc. v. City of Memphis*, 2020 WL 4015476. The court in *Elvis* shielded the Mayor only after explicitly finding he had absolutely no personal involvement in the retaliatory decision; conversely, the record in this case clearly show Mr. Schlacks personal involvement in the withheld commissions and pretextual terminations.

Finally, *Watson v. City of Cleveland* 202 F. App'x 844, (6th Cir. 2006); offers Defendant no shield. The plaintiff in *Watson* sought to depose the Mayor merely to obtain the "results of an investigation", information the Sixth Circuit noted was easily obtainable through simple interrogatories. Here, Plaintiffs should be afforded the opportunity to depose the individual who ultimately stopped the payments from being processed following the calculations and submissions from Adams and Burch, and to uncover the offline, verbal directives he gave regarding their compensation and his rationale for terminating the Plaintiffs.

**C. Defendant Conceded Mr. Schlacks's Relevance in its Initial Disclosures.** Defendant's current claim that Mr. Schlacks's deposition is merely cumulative or unnecessary is directly contradicted by its own pleadings. In Defendant's Rule 26(a)(1)(A) Initial Disclosures served on September 17, 2024, Defendant affirmatively listed Mr. Schlacks as an individual who possesses "discoverable knowledge regarding Plaintiffs' employment, Plaintiffs' job performance, and general knowledge of the issues involved in this lawsuit". Defendant cannot designate its CEO as a key witness, string Plaintiffs along for eight months regarding his deposition availability, and then demand a protective order claiming his testimony is duplicative when Plaintiffs attempt to question him on those exact subjects.

## IV. DEFENDANT'S ALTERNATIVE REQUESTS FOR POSTPONEMENT AND RESTRICTIONS ARE UNWARRANTED AND PROCEDURALLY IMPROPER

In the alternative, Defendant asks this Court to either postpone Mr. Schlacks's deposition until after the depositions of Mr. Burch and Mr. Adams, or arbitrarily restrict his testimony. Both requests should be denied.

### A. Postponement pushes the deposition beyond the discovery deadline.

Defendant's request to postpone Mr. Schlacks's deposition until after Mr. Burch and Mr. Adams are deposed inevitably would cause Mr. Schlacks's deposition to occur after the Discovery cut-off of April 14, 2026. Plaintiffs would not oppose a small extension of one week for scheduling purposes of Mr. Schlacks's deposition. If the Court is inclined to grant Defendant's alternative request to postpone the deposition, Plaintiffs respectfully request that the Court explicitly order the deposition to take place outside the current discovery deadline. Furthermore, Plaintiffs request that the Court explicitly retain authority and jurisdiction over Mr. Schlacks's deposition, including the ability to hear and resolve any subsequent discovery disputes that may arise from his testimony treating the deposition exactly as if it were being taken inside the current discovery time period.

### B. Mr. Schlacks's actions were not "ministerial."

Defendant attempts to downplay Mr. Schlacks's role by claiming he merely performed the "ministerial act" of approving or disapproving recommendations. The evidentiary record proves otherwise. The withholding of Plaintiffs' wages was not an automated or ministerial process; it was tightly controlled by the CEO. For example, when Plaintiff Mario Olivelli's earned commissions were withheld, management had to actively petition Mr. Schlacks to release the funds, which only occurred after Mr. Burch physically "walked out of Jabboks office." A corporate executive who personally reviews compensation structures, actively holds an employee's pay

8

hostage until petitioned by a Director, and oversees a department restructure because he has "differet[sic] needs" is not acting in a "ministerial" capacity.

C. **A two-hour time limit is highly prejudicial and insufficient.**

Defendant's request to arbitrarily limit this deposition to two hours is highly prejudicial. Two hours is wholly insufficient to properly examine the CEO regarding his direct involvement in the issues of this case.

**D. In the Alternative, If the Court Grants the Protective Order, Defendant Should Be Precluded from Using Testimony from Mr. Schlacks at Any Stage of This Litigation**

In the event that the Court grants Defendant's Motion for Protective Order, Plaintiffs respectfully request that the Court preclude Defendant from offering testimony from Mr. Schlacks in support of any claims or defenses for the remainder of this litigation.

**V. CONCLUSION**

Defendant has shown no "particular and specific demonstration of fact" that Mr. Schlacks will suffer annoyance, embarrassment, or undue burden by sitting for a deposition, as required by Rule 26(c)(1). Instead, Defendant seeks to use a legally rejected doctrine to shield the ultimate decision-maker who personally reviewed the disputed compensation structures and participated in the terminations.

For these reasons, Plaintiffs respectfully request that this Court DENY Defendant's Motion for a Protective Order and compel Jabbok Schlacks to appear for a deposition in this matter.

Respectfully submitted this 8th day of April, 2026.

/s/ H. Eric Burnette
H. Eric Burnette (#024342)
Burnette, Dobson, & Pinchak
711 Cherry Street

9

Chattanooga, Tennessee
Tel: (423) 266-2121
Fax: (423) 266-3324
eburnette@bdplawfirm.com
*Attorney for Plaintiffs Matthew Bond, Heidi Vento, and Marion Olivelli*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed electronically this the 8th day of April 2026.  Copies may also be accessed through the Court's ECF system. Notice of this filing was served via the Court's Electronic Case Filing system to all parties and counsel listed on the electronic filing receipt:

/s/ *H. Eric Burnette*
H. Eric Burnette